LOTTINGER, Judge.
This is a suit for damages ex-delicto for property damages arising from an automobile collision between an automobile belonging to petitioner, Claude J. LeBlanc, and an automobile belonging to defendant, James F. Hebert. From judgment in favor of petitioner, defendant appeals.
The collision occurred on May 30, 1950, at the intersection of Country Club Drive and Indest Street in the City of New Iberia, Louisiana. Defendant, James F. Hebert, was driving his automobile in an easterly direction on Country Club Drive. Petitioner’s minor son, Harry J. LeBlanc, was driving petitioner’s automobile in a northerly direction on Indest Street. The Calvert Fire Insurance Company, the insurance carrier on petitioner’s automobile, is a party plaintiff herein by virtue of its right of subrogation, it having paid damages to petitioner’s automobile in the sum of $324.-74. The petitioner, LeBlanc, claims damages in the sum of $100.00, the deductible portion of its insurance policy with Calvert Fire Insurance Company. Thus, both plaintiffs claim damages in the total of $424.74.
The petition alleges that young LeBlanc was proceeding northerly on the right hand' side of Indest Street, a right of way street,, at a reasonable rate of speed; that he reduced his speed as he approached Country Club Drive in order to ascertain that the way was clear, and then cautiously proceeded across the intersection. At the time, defendant was driving his automobile at a rapid and reckless rate of speed in an easterly direction on Country Club Drive; that he failed to slow his speed, or stop, as he entered the intersection in spite of the fact *170 that there was a stop sign at the southwest corner of the intersection. The impact occurred at the approximate center of the intersection, the Hebert car striking the Le-Blanc car at the left front door.
The answer of defendant denies the allegations that he was proceeding at a rapid rate of speed, and that there was a stop sign located on the corner to warn him that he was entering a right of way street. Defendant alleges that he was proceeding at a rate of about IS miles per hour; that, upon nearing the intersection, he slowed his speed to 5 or 6 miles per hour; and'that, although he looked to his right to determine whether the way was clear, he did not see petitioner’s car approaching. He, therefore, claims that young LeBlanc was proceeding at a rapid and unlawful rate of speed.
The impact took place at, or near, the center of the intersection. As a result thereof, the LeBlanc car swerved, or was thrown, to its right and ran into a fireplug on the northeast corner of the intersection. The. evidence indicates that the fireplug was some ten feet from the point of impact. The right front wheel of the LeBlanc car struck the fireplug knocking it over and causing water to flow therefrom. The Le-Blanc car came to rest against, or slightly over the fireplug. The Hebert oar, on the other hand, was turned approximately ninety degrees to its left and proceeded northerly along Indest Street. It came to rest some twelve feet from the intersection, on Indest Street.
The lower court gave judgment for petitioners in the full amount of their demand. This case was consolidated for trial with that of Gulf Public Service Co., Inc., v. Hebert, La.App., 56 So.2d 172. Said case was for damages to the fireplug which was damaged by LeBlanc’s car, and was against both LeBlanc and Hebert. In that case, the court gave judgment against Hebert, and dismissed the suit against Le-Blanc. In the instant case, the defendant, Hebert, has appealed. An appeal was also filed in the companion case as against both LeBlanc and Hebert, however, a separate opinion will be rendered therein.
As is usual in a case of this nature, the testimony is most conflicting and irreconcilable. Considering all the evidence, we conclude that, at the time of the impact, the LeBlanc car had proceeded some two to three feet past the center line of Country Club Drive. The Hebert car, on the other hand had proceeded some two or three feet past the center line of Indest Street at the moment of the impact. An ordinance of the City of New Iberia was filed into evidence wherein the right of way is given traffic along Indest Street. Although Country Club Drive is supposed to be a stop street, the evidence conclusively shows that there was no stop sign facing traffic headed east along Country Club Drive at the time of the collision.
Defendant Hebert stated that he was proceeding at about 15 miles per hour along Country Club Drive shortly prior to the collision. Upon reaching the intersection he slowed his speed to some 6 miles per hour and looked to his right to determine whether the way was clear. He stated that there were no obstructions to his vision, and that he could see for a distance of a full block. He further stated that he did not see the LeBlanc car approaching, and that, had he seen it approaching, he could have easily stopped as his brakes were in perfect condition. Hebert testified that he did not see the LeBlanc car until the moment of impact. He repeated himself on this score several times during the course of his direct and cross examination.
Several witnesses, both for petitioners .and defendant, testified that there were no obstructions to vision at the intersection. Their testimony as to the distance of clear vision for a motorist approaching, as was Hebert, ranged from one to two blocks. In spite of this, Hebert was clear and determined in his testimony that he did not see the LeBlanc car until he struck it. A disinterested witness, Mrs. Weathersby, testified that Hebert was proceeding at a rapid rate of speed, and that he failed to slow his speed or stop for the intersection.
We do not believe that there is any doubt that young LeBlanc was exceeding the speed limit. The limit in New Iberia is set at 25 miles per hour. Mrs. Weathersby *171 estimated his 'speed at about 30 to 35 miles per hour. Nathan Broussard, Jr., a passenger in the LeBlanc car, estimated young LeBlanc to be travelling at, about the same speed. Both Broussard and young LeBlanc testified that they saw the Hebert car when it was some twenty to thirty feet from the intersection. They both testified that they believed that Hebert would recognize their right of way. When it became apparent that Hebert was not going to stop, young LeBlanc applied his brakes and skidded some distance before the impact.
The distance of the skid marks made by the LeBlanc car was estimated by several of the witnesses. Their estimates ranged from 90 feet to 25 feet. The 90 foot estimate was that of defendant, who claims that he measured it with a steel tape. The 25 foot estimate was that of young Le-Blanc. Two police officers investigated the accident. One estimated the skid marks at from 25 to 40 feet. The other estimated same at about 65 feet. At the time of the collision, the street was wet.
We are not favored with a written opinion of the lower court, however, by virtue of its judgment, it obviously found negligence on the part of defendant Hebert, and found no contributory negligence on the part of young LeBlanc. We are inclined to disagree with the decision of the lower court. The evidence conclusively shows that young LeBlanc was proceeding at a rate of speed of about 30 or 35 miles per hour, on a wet street. This is shown by testimony of two eyewitnesses, one of which was the only disinterested eyewitness introduced.
We believe that the proximate cause of the collision was due to the concurring negligence of both the defendant, James F. Hebert and Harry J. LeBlanc, the minor son of Claude J. LeBlanc, the plaintiff herein. The defendant, Hebert, failed to keep a proper lookout for oncoming traffic at the intersection. Although he stated that he did look, we believe that the facts conclusively show that he did not look. He testified that he looked when be was some 9 to 10 feet from the intersection and that no car was coming for a distance of one block. As the intersecting street was 30 feet in width, the defendant travelled some 25 feet from the time he claimed to have looked to the time of the impact. By his own admission, defendant did not see anyone approaching for a distance of a block. We believe that young LeBlanc would have had to have been travelling at a speed greatly i-n excess of 30 to 35 miles per hour to have been out of range of defendant’s vision at the time defendant claims he looked. Such an excessive speed is not substantiated by even the greatest estimate of skid marks of the LeBlanc car and the short distance it travelled after the impact.
We are of the opinion that Harry J. Le-Blanc, the minor son of Claude J. LeBlanc, the driver of his father’s car, was negligent in the following particulars: In driving too fast, well knowing that the pavement was wet and that in the event of application of his brakes, his automobile would skid; in violation of the speed limit set out by the provisions of the ordinance of the City of New Iberia, which negligence was a proximate cause in that due to the slippery condition of the street, he was unable to stop and avoid the accident; in not keeping a proper lookout in that he had a clear view of the Hebert oar for more than 200 feet before reaching the intersection. We are of the opinion that he was as equally guilty of negligence, as was Hebert. He should have seen and realized that Hebert was not slowing down and would not stop at the intersection, long prior than he did, and in sufficient time to stop his automobile before, yet he did not siow down or have his car under proper control. This accident 'happened in his own words: “I saw him from a distance because there is a clearing at that point, at the intersection; and knowing that I had the right of way, I thought the automobile vuotdd observe it”'. However, he does not give any reasons for his assumption. To the contrary, he states that Hebert was not slowing down or gave any signs of his intention to stop. Nathan Broussard’s testimony is to like effect.
Since the father of young LeBlanc is responsible for the tort of his minor son, his negligence is imputable to his father, Claude J. LeBlanc, the plaintiff herein.
*172 The judgment rendered in the companion case of Gulf Public Service Co., Inc., v. Hebert and LeBlanc should therefore be amended so as to cast both defendants in solido for the amount of the claim of said plaintiff therein.
Therefore for the above and foregoing reasons, the judgment appealed from herein is hereby reversed and annulled and plaintiff’s suit dismissed with costs.
Judgment reversed.