483 So.2d 1037 (1985)
Matilda GASPARD, Plaintiff-Appellee,
v.
ST. PAUL FIRE & MARINE INSURANCE CO., Defendant-Appellant.
No. 84-853.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
Rehearing Denied January 6, 1986.
*1038 Provosty, Sadler & Delaunay, Albin A. Provosty, Alexandria, for defendant-appellant.
Darrel D. Ryland, Marksville, for plaintiff-appellee.
Before FORET, YELVERTON and KING, JJ.
FORET, Judge.
This is a suit for worker's compensation. Plaintiff, Matilda Gaspard, filed suit against defendant, St. Paul Fire & Marine Insurance Company, the worker's compensation carrier of her former employer, Central Louisiana Home Health Agency, Inc. In addition to worker's compensation benefits, plaintiff sought penalties and attorney's fees. The trial court found that plaintiff was totally and permanently disabled and awarded her benefits in accordance with this determination. The trial court denied plaintiff's claim for penalties and attorney's fees. Defendant appealed, asserting that the trial court erred when it found that plaintiff was permanently and totally disabled.

FACTS
Plaintiff, Matilda Gaspard, was employed by Central Louisiana Home Health Agency, Inc. as a licensed practical nurse. Plaintiff's employment required her to make house calls at the homes of patients in the parishes of Rapides and Grant. Plaintiff would check the patient's vital signs, draw blood, check to see if the patients were taking their medications correctly and eating a proper diet. She would also dress wounds if necessary and perform exercises with those patients confined to bed.
On July 3, 1983, while on her first call of the morning, plaintiff turned an ankle stepping out of her car. Plaintiff's ankle was swollen and painful when she left the home of her first patient. She visited her second patient but then called her supervisor to tell her that she was injured and needed to go home and elevate her leg. Her supervisor, however, was sick, and plaintiff had to finish seeing four other patients. At the end of her workday, plaintiff went to the emergency room at Doctors' Hospital in Marksville. Plaintiff's leg was x-rayed, but no fracture was found. The following day was a holiday, and plaintiff stayed home. Although plaintiff called in sick the next day, she was told that she would have to see her patients. Plaintiff worked until 3:00 P.M., when she went to a doctor's appointment. Plaintiff returned to the doctor's the next day, and the doctor put a cast on her right leg. She returned to the emergency room several days later because her foot was swollen and her toes had turned blue. The cast was cut off and, later that day, plaintiff was admitted to the hospital with a suspected case of deep vein thrombosis. Plaintiff was hospitalized for six days, from July 10 to July 16, 1983. During her hospitalization, plaintiff was administered pain medication and an anticoagulant. Plaintiff continued to take the anticoagulant after her release from the hospital.
Plaintiff returned to work on August 8, but worked only four hours because of pain in her right leg. Several days later, on August 12, during a meeting with her supervisor, Sharon Ourso Cupples, plaintiff requested a more sedentary job. Mrs. Cupples informed plaintiff that there was no *1039 such position open and that if she were not able to perform the duties of her job, she would have to let her go. When plaintiff told Mrs. Cupples that she was not capable of performing her former duties, Mrs. Cupples informed plaintiff that she was fired. Plaintiff has not returned to work since and has earned no wages.
Defendant paid temporary total compensation benefits to plaintiff until December 6, 1983. It terminated benefits at this time based on the medical opinion of Dr. L. Donovan Perdue, who, after examining plaintiff, determined that she was able to return to work.

WAS PLAINTIFF TOTALLY AND PERMANENTLY DISABLED?
The worker's compensation statutes were extensively amended in 1983. One result of these amendments was to make it more difficult for an injured employee to qualify for permanent and total disability benefits. As amended, the section dealing with permanent and total disability not only places the burden of proving disability on the injured employee, but requires that such proof be made by clear and convincing evidence. The employee must show that he is unable to engage in any employment or self-employment, regardless of the nature of the employment or self-employment, including "any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment." LSA-R.S. 23:1221(2)(c). With these amended provisions, the legislature has prohibited the use of the jurisprudentially created odd lot doctrine and working in pain doctrines. Any pain suffered by an injured employee while working is irrelevant to a determination of total permanent disability except perhaps in those instances where it can be shown that the injured employee's pain renders him physically unable to engage in any employment.
In the present case, plaintiff was injured after the effective date of the amendment. Given the stringent standards which govern the award of total and permanent disability benefits, we must conclude that the trial court erred when it awarded plaintiff such benefits. Plaintiff clearly failed to carry her burden to prove, by clear and convincing evidence, that she was totally and permanently disabled as defined by the statute. All of the medical experts, including those testifying on behalf of plaintiff, indicated that plaintiff would be able to engage in employment with certain limitations, namely that the employment should not involve heavy lifting or lengthy periods of time sitting or standing without being able to change positions.
Plaintiff did complain that substantial pain would prevent her from engaging consistently in any type of employment. However, plaintiff did not claim, nor did she prove, that her pain rendered her physically unable to perform any work. In fact, the medical testimony indicated that it would be therapeutic for plaintiff to engage in employment provided that the duties of her employment met with the few restrictions mentioned above. Plaintiff clearly failed to carry her burden of proof, and the trial court should not have awarded her benefits for total and permanent disability.

SUPPLEMENTAL EARNINGS BENEFITS UNDER 1983 ACTS REVISING WORKER'S COMPENSATION PROVISIONS
Although plaintiff is not entitled to total and permanent disability benefits, she is entitled to supplemental earnings benefits. In order to be entitled to these benefits, an injured employee must be unable to earn 90% or more of the wages he received at the time of his injury. LSA-R.S. 23:1221(3). Since no burden of proof is specified, by implication, the applicable burden of proof is a preponderance of the evidence, the customary burden of proof in a civil case. In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn *1040 a wage. In the present case, one such factor is the substantial pain which plaintiff will suffer while working.
Plaintiff testified that following her injury she had been unable to perform the duties of her former employment because of pain in her right leg. She claimed that in the intervening period of time between her dismissal by Central Louisiana Home Health Agency and the trial, she continued to suffer pain and that on certain days she had difficulty walking because of this pain. Plaintiff's complaints were corroborated by the testimony of her mother, who testified that plaintiff's activities had been severely limited since her injury.
Plaintiff's complaints are consistent with the medical testimony. Plaintiff was hospitalized in July of 1983 for six days with a diagnosis of deep vein thrombosis. An xray taken in August of that year revealed that plaintiff suffered from incompetent perforating veins, more commonly known as varicose veins. Dr. Jose R. Garcia Ramirez testified that he had diagnosed plaintiff as suffering from chronic-post-phlebitic syndrome, a condition which was the result of damage done to the valves in plaintiff's leg by the episode of deep vein thrombosis. Dr. Lee McKinley, testifying on behalf of defendant, acknowledged that the x-ray findings were consistent with chronic-post-phlebitic syndrome, although he testified that at the time he examined plaintiff, he did not find any of the other physical findings characteristic of this syndrome. He admitted that these findings were not always present and that since he had only examined plaintiff once, he had had a limited opportunity to observe physical symptoms such as swelling and edema which would only be present during an acute phase of the syndrome. According to plaintiff's medical experts, plaintiff's on-the-job injury had, in all probability, caused plaintiff's deep vein thrombosis. Dr. McKinley admitted that the immobilization of plaintiff's leg following her accident might have precipitated this malady.
We feel that plaintiff's testimony regarding her chronic pain, corroborated by medical testimony, is sufficient to make out a prima facie case for entitlement to supplemental earnings benefits. Specific limitations, however, are imposed on the award of supplemental earnings benefits by the amended statute. The only one applicable to the present case is contained in subparagraph (3)(c)(i) of R.S. 23:1221.[1] This paragraph provides that the amount which is determined to be the wages an employee is capable of earning must at least equal any amount he would have earned in any employment or self-employment which he is physically able to perform and which was offered to him or which is proven available to him in his or the employer's community or reasonable geographic area. The employer bears the burden of proving the applicability of this limitation. To do so, he must show that the employee is physically capable of the work and, secondly, that such work was offered or tendered to the employee, or is available to the employee in his or the employer's community or reasonable geographic area. Although defendant sought to show that plaintiff was capable of being employed in a blood bank to draw blood, there was absolutely no evidence that such employment was available in the area or what wages plaintiff might earn in such employment. There was also the suggestion that plaintiff might be able to work as a seamstress. Once again there was no proof offered as to the availability of such work or the wage that could be earned. More importantly, there was medical testimony indicating that plaintiff might not be *1041 capable of such work since defendant's own medical expert testified that plaintiff should not perform any work which required her to remain seated for a long period of time.
Defendant did seek to show that Central Louisiana Home Health Agency had offered to employ plaintiff in the same capacity in which she was previously employed by them. We think that plaintiff is, nevertheless, entitled to supplemental earnings benefits. The second part of subparagraph (3)(c) of R.S. 23:1221 provides that:
"(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee can not perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment."
Here, we believe that the plaintiff did prove by clear and convincing evidence that solely as a consequence of substantial pain she was not able to perform the employment offered. As we noted above, plaintiff testified that she was unable to perform the duties of her former employment due to pain. She testified that she continued to suffer from pain following her injury and up to the time of trial and that her activities were severely restricted because of the pain. Plaintiff's mother corroborated plaintiff's testimony, and plaintiff's complaints were consistent with the medical evidence.
The parties stipulated that plaintiff's average weekly wage was $307.65, giving plaintiff an average monthly wage at the time of her injury of $1322.90. Plaintiff is entitled to 74% of 90% of the difference between this average monthly wage and any wage she has earned or will earn in any month following her injury. Such payments, however, may not exceed a maximum of 520 weeks. See LSA-R.S. 23:1221(3)(d).

DECREE
For the foregoing reasons, the judgment of the trial court declaring the plaintiff to be entitled to benefits for total and permanent disability is reversed, and judgment is rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiff, MATILDA GASPARD, and against the defendant, ST. PAUL FIRE & MARINE INSURANCE COMPANY, declaring plaintiff to be entitled to supplemental earnings benefits and awarding plaintiff such benefits equal to 74% of the difference between 90% of $1322.90 and the average monthly wage earned in any month thereafter in any employment or self-employment, said payments not to exceed a maximum of 520 weeks, with credit for sums previously paid, together with legal interest on each installment from date due until paid, plus medical and travel expenses up to the statutory maximum, with credit for all medical and travel expenses previously paid.
Costs at the trial level and on appeal are assessed one-half to plaintiff and one-half to defendant.
REVERSED IN PART AND RENDERED.
NOTES
[1] LSA-R.S. 23:1221(3)(c)(i) provides:

"Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region."