FORET, Judge.
This is a worker’s compensation suit. Plaintiff, Mark Roszell, filed suit against his employer, Mapco Petroleum, Inc. (Map-co), and against Mapco’s worker’s compensation carrier, INA of Texas, Inc. (INA) for worker’s compensation benefits, penalties, and attorney’s fees. The trial court rendered judgment finding plaintiff to be totally and permanently disabled from July 29, 1983, and awarding weekly worker’s compensation benefits from that date; all medical expenses (including travel expenses); legal interest on each past due sum from date due until paid, with credit for sums previously paid.[1] Additionally, the trial court awarded a 12% penalty on all past *660 due benefits, plus $5,000 reasonable attorney’s fees against INA, ruling that the insurance company was arbitrary in handling plaintiffs claim. It is from the judgment of November 26, 1985, that defendants appeal.
The sole issue raised by this appeal is whether the trial court committed manifest error in finding that plaintiff was totally and permanently disabled.
FACTS
Plaintiff claims he injured his left knee and back as a result of falling while carrying a case of beer on or about July 19, 1983. Plaintiff was employed by Mapco as a night cashier in a convenience store and earned approximately $154 per week. He had the additional duties of stocking the shelves, stocking the beer cooler, sweeping the floor, and mopping a small restroom floor. Plaintiffs heaviest lifting was 20 pounds per case of beer when stocking the cooler; however, he later testified that the 20-pound weight applied to the 40-oz bottles and not to the normal six- and eight-packs, which are lighter. Plaintiff stated that the cooler stocking required about one hour of his eight-hour workday, and that it is divided over a period of time. Plaintiff testified that he is not permitted to sit when working. Plaintiff is 21 years old and has a high school education. Since the accident, plaintiff has not returned to work nor earned any wages.
The Office of Worker’s Compensation recommended an award of temporary total benefits from July 20, 1983, through April 15,1985, at the rate of $102.67 per week, in addition to payment of all related medical expenses. Defendants complied with the recommendation and paid a total of $9,522.97 in weekly benefits and medical expenses totaling $11,236.15, plus travel reimbursement of $645, through date of trial.
Based upon medical reports from Dr. R.J. Beurlot, an orthopedic surgeon, in March and April of 1985, and the recommendation of the Louisiana Office of Worker’s Compensation, defendants terminated weekly compensation benefits on April 15, 1985, although defendants continued to pay medical expenses. Defendants did not reinstate benefits, based upon the recommendation of the Office of Worker’s Compensation and an August 15, 1985 report of Dr. Beurlot, which released plaintiff to full work activity.
REVIEW OF MEDICAL EVIDENCE
The initial treating physician was Dr. McCann. He first saw plaintiff on July 20, 1983.[2] He stated that plaintiff was hypersensitive in the lower back and left knee and was obese and difficult to evaluate. Dr. McCann noted that there was no discoloration nor swelling of the left knee. His diagnosis was that plaintiff suffered from back strain and ligament strain and therefore provided a knee splint to stabilize the knee. He prescribed muscle relaxants, pain pills, cortisone pills, and a cortisone injection. Plaintiff claimed no change in his back’s condition, but stated that his left knee was considerably better. However, plaintiff admitted that he had not been wearing the splint. At that time, Dr. McCann referred plaintiff to Dr. Beurlot, an orthopedic surgeon; however, plaintiff did not see Dr. Beurlot until much later. Plaintiff continued to see Dr. McCann until December 14, 1984, at which time he refused to give plaintiff any further pain pill prescriptions. In Dr. McCann’s opinion, there was no permanent defect, although some further treatment was indicated, based upon plaintiff’s subjective complaints *661 and history, for an undetermined length of time.
Dr. Bruce Razza, an orthopedic surgeon in New Orleans, was recommended by plaintiffs attorney. Plaintiffs first visit to Dr. Razza was on March 21, 1984. After examinations and x-rays, Dr. Razza determined that plaintiff suffered from a congenital defect in both knees (1 degree chron-dromalacia), i.e., high riding kneecaps, and that plaintiff had a grinding noise in the left kneecap. The x-rays were generally normal, and there was no evidence of sub-luxation or dislocation of the kneecap. The only defect revealed in the back was a congenital anomaly of transitional vertebra, which presented minor physical problems because there was a fusion of these bones.
Dr. Razza assigned a 5% to 10% partial permanent disability to plaintiffs entire body due to the congenital back facet syndrome. However, he did note that the back will remain stable. Additionally, Dr. Razza stated that plaintiffs weight was an aggravating factor. Dr. Razza could not assign any disability to the knee without ortho-scopic treatment.
Plaintiff repeatedly refused orthoseopic treatment. By way of deposition, Dr. Raz-za stated that several months of recovery are required after orthoseopic treatment, and that plaintiff would have reached maximum medical benefit by October 24, 1985, had the orthoseopic procedure been performed in May, while plaintiff was hospitalized.
Dr. Razza stated that throughout the office visits, plaintiffs knee progressively improved, although there was no significant change in his back. Dr. Razza hospitalized plaintiff for x-rays, CT scanning, and a myelogram May 9,1985 through May 17, 1985. After analysis, Dr. Razza imposed the following restrictions: plaintiff is to lift no more than 15 to 20 pounds when lifting repetitively; no infrequent lifting of more than 40 to 50 pounds; no more than one to two hours sitting or standing without changing position; no repetitive bending, squatting, nor chair climbing.
Dr. Beurlot, the orthopedic surgeon recommended by Dr. McCann, stated that there was no impairment attributable to plaintiffs back condition, but opined that there was some impairment of the left knee. He stated that because of plaintiffs fear of reinjury, he did suffer some psychological impairment. Dr. Beurlot recommended a knee brace to counteract this problem. He was of the opinion that plaintiff could return to his former occupation, that of a cashier.
Plaintiff testified that the subluxation of his knee took place only one time and has never recurred. Further, the subluxation of the knee has not been confirmed by any physician because there has been no swelling or discoloration of the knee.
WAS PLAINTIFF TOTALLY AND PERMANENTLY DISABLED?
The extensive amendments to the worker’s compensation statutes in 1983 provide for a more onerous burden of proving permanent and total disability. The injured employee must prove disability by clear and convincing evidence. Furthermore, the' claimant must show that he is unable to engage in any employment or self-employment, regardless of the nature of the employment or self-employment, including “any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.” LSA-R.S. 23:1221(2)(c). Considering the very strict standards which apply to an award of total and permanent disability benefits, we conclude that the trial court erroneously awarded plaintiff such benefits.
Plaintiff did not carry his burden of proving, by clear and convincing evidence, that he was totally and permanently disabled as defined in LSA-R.S. 23:1221. The medical experts were of the opinion that plaintiff could engage in employment with certain restrictions. Those restrictions were: no heavy lifting (over 30 pounds), no lengthy periods of time sitting or standing *662 without changing position, and the wearing of a knee brace.
Plaintiff alleged that substantial pain would prevent him from working consistently in any type of employment. However, plaintiff did not prove that his pain rendered him physically unable to perform any work. In fact, Dr. Bruce Razza, testifying by way of deposition, said that plaintiffs knee would not prohibit him from working as a cashier, for example, and that plaintiffs back would remain stable.
In Pool v. G.N. Batteries, Inc., 480 So.2d 898 (La.App. 2 Cir.1985), the court stated that:
“It is axiomatic that the testimony of an injured employee alone may establish a compensable accident by a preponderance of the evidence if supported by corroborating circumstances and the reliability of the testimony is not suspect. West v. Bayou Vista Manor, Inc., 371 So.2d 1146 (La.1979); Jones v. Wausau Insurance Companies, 463 So.2d 883 (La.App. 2d Cir.1985).
Pool’s testimony concerning the accident was supported by corroborating circumstances and there was no reason to doubt his credibility. Therefore, the trial judge’s fact-finding on this issue was not manifestly erroneous.
[[Image here]]
Further, no judgment of total permanent disability may be entered prior to an evaluation of rehabilitation possibilities or during a rehabilitation program. La. R.S. 23:1226(D); 1221(2)(e); 1226(G). In the latter instance the worker is entitled to temporary total disability benefits for the duration of the program. La.R.S. 23:1226(F).
Here, although the medical testimony clearly established that Pool was totally disabled at the time of the trial, Dr. Joffrion conceded that in time there would be types of work Pool could perform. Furthermore, the record contains no evaluation of rehabilitation possibilities. Consequently, we cannot say that plaintiff is totally permanently disabled.
In Brewster v. Manville Forest Products Corp., 469 So.2d 340 (La.App. 2d Cir.1985), a similar case, we commented:
‘While the evidence shows that the plaintiff should recover to a point where he will be able to engage in some type of gainful occupation, at the time of trial plaintiff’s condition had not stabilized and he was in need of further medical testing and treatment. Under these circumstances, plaintiff’s disability would be a temporary total disability rather than permanent.’ ”
Pool, supra, at 900, 901.
There is an absence of evaluation of rehabilitation possibilities in the record.
In Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App. 3 Cir.1985), the court noted that the legislature had prohibited the use of the jurispruden-tially created odd-lot doctrine and the working in pain doctrine. The court stated:
“The employee must show that he is unable to engage in any employment or self-employment, regardless of the nature of the employment or self-employment, including any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. LSA-R.S. 23:1221(2)(c). With these amended provisions, the legislature has prohibited the use of the jurispruden-tially created odd lot doctrine and working in pain doctrines. Any pain suffered by an injured employee while working is irrelevant to a determination of total permanent disability except perhaps in those instances where it can be shown that the injured employee’s pain renders him physically unable to engage in any employment.”
Gaspard, supra, at 1039.
The plaintiff in Gaspard was awarded supplemental earnings benefits under LSA-R.S. 23:1221(3) because her mother corroborated her testimony of pain and disability. Mr. Roszell has presented no corroborating evidence to confirm or substantiate his complaints of pain or unemployability.
*663 Plaintiff has clearly failed to carry his burden of proving, by clear and convincing evidence, that he was totally and permanently disabled as defined by the statute. The medical experts, including those testifying on behalf of plaintiff, have indicated that plaintiff is able to engage in some type of employment with certain limitations, namely that the employment should not involve heavy lifting or lengthy periods of time sitting or standing without being able to change positions.
After carefully examining the record, we find that plaintiff is not entitled to any further benefits beyond what he has already received. Accordingly, the entire judgment of the trial court is reversed.
The record is replete with inconsistencies and discrepancies. For example, plaintiff testified at trial that he weighed 175 pounds at the time of the accident, but 260 pounds at the time of trial. However, the report of Dr. McCann shows that plaintiff weighed 298 pounds as of March 28, 1984.
Plaintiffs complaints that his kneecap became misplaced or subluxed in the accident and that it still presents problems are totally unsubstantiated by medical testimony. Furthermore, there was no corroborating testimony presented at trial on behalf of plaintiff. Plaintiff was alone when the accident allegedly occurred. His complaints that he is unable to walk for long periods of time, sit, cannot walk up stairs, and that his knee tends to give way are entirely unsubstantiated. Since the accident, plaintiff has done nothing but remain at home watching t.v., making no attempt to apply for a job or return to work.
Plaintiff testified that before graduating from high school he worked picking up hay and chopping wood. After graduation, he worked eight months on an assembly line for Baker Manufacturing in Pineville, Louisiana. He initially was on the assembly line boxing furniture through the use of hand tools, but later loaded trucks by mechanical means. Plaintiff additionally worked as a carpenter’s helper for Fayard Construction Company in New Orleans. For three months he was employed as a tractor driver. Plaintiffs physical and educational capabilities suggest that he is capable of performing many different types of work and suited for several different types of occupations.
Plaintiff testified that the insurance company chose Dr. Beurlot; however, the record reflects that Dr. McCann referred plaintiff to Dr. Beurlot. Dr. McCann scheduled an appointment for plaintiff with Dr. Beurlot. Plaintiffs new attorney can-celled the initial orthopedic consultation scheduled by Dr. McCann. Plaintiff testified that Dr. McCann referred him to Dr. Razza, but later admitted that it was his own attorney who chose Dr. Razza. Additionally, plaintiff had no explanation for his failure to attend scheduled visits with Dr. Beurlot on the dates of March 8, July 5, and July 19, 1984.
Dr. McCann placed plaintiff in a splint for his knee at the initial visit of July 20, 1983, which splint would act to immobilize the knee. Plaintiff admitted to the physician on August 4, 1983, that he had not been wearing the brace. In February, 1984, plaintiff was started on a program of physical therapy. However, when he returned one month later, he stated he had not undergone the physical therapy.
Plaintiff continued to visit Dr. McCann. However, in December of 1984, when Dr. McCann refused to refill plaintiffs pain medication, plaintiff terminated his treatment with Dr. McCann.
Upon referral by his attorney, plaintiff saw Dr. Bruce Razza. Dr. Razza recommended orthoscopic examination of the knee, a treatment which plaintiff has refused to date of trial. Knee exercises and a knee and back brace were also recommended; however, in July of 1984, plaintiff admitted to Dr. Razza that he would not wear the back brace. Not until plaintiffs weekly worker’s compensation benefits were terminated did he decide to undergo diagnostic testing for his back. The record reflects that plaintiff suffered from nothing more than a congenital anomaly in his low back and left knee, which could have been successfully treated with medication *664 and physical therapy (in which plaintiff refused to engage). Furthermore, the record reflects that plaintiff could have returned to gainful employment through the use of a knee brace (for psychological reasons only). Consequently, we reiterate that plaintiff has failed to prove his claim.
In summary, plaintiffs failure to have any confirming or substantiating evidence as to his complaints of pain or disability or as to the occurrence of the accident suggests that plaintiff has not carried his burden of proving entitlement to any additional worker’s compensation benefits beyond what he has already received.
For the above mentioned reasons, and because of our reversal of the substantive portion of the trial court’s judgment, we dismiss plaintiff’s suit and therefore need not discuss any of the other specifications of error assigned by defendant.
DECREE
For the reasons set forth above, the judgment of the trial court is reversed, and plaintiff’s suit dismissed. Costs of this appeal and at the trial level are assessed against plaintiff.
REVERSED.

. Pursuant to written opinion rendered November 15, 1985, written judgment was read and signed on November 26, 1985; however, the judgment which was prepared by plaintiffs counsel erroneously failed to include credit for sums previously paid.

. That plaintiff saw Dr. McCann on July 20, 1983 is an apparent inconsistency resulting from the fact that plaintiff filed suit alleging that the accident took place on or about July 29, 1983; the trial court found plaintiff to be disabled from July 29, 1983; and the Office of Worker’s Compensation found plaintiff entitled to benefits from July 20, 1983. However, in response to interrogatories propounded by Map-co, plaintiff stated the date of the injury to be July 19, 1983 at 2:00 a.m. Plaintiff visited Dr. McCann on the day following the accident, July 20, 1983.