630 So.2d 318 (1993)
Ernest J. HEBERT
v.
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 93-CA-562.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 1993.
Daniel E. Becnel, Jr., Reserve, for plaintiff/appellant.
Samuel R. Cicero, Baton Rouge, for defendant/appellee.
Before GAUDIN, GRISBAUM and WICKER, JJ.
WICKER, Judge.
This appeal arises from a claim for worker's compensation benefits by plaintiff/appellant, Ernest J. Hebert (Hebert), for alleged work-related injuries caused by Paraquat poisoning. Hebert's claim was filed against the Louisiana Department of Transportation and Development (DOTD). The hearing officer granted judgment in favor of Hebert insofar as he allowed him to receive "reasonable and necessary pulmonary medical treatment as it relates to his toxic exposure." However, the hearing officer also held that Hebert "failed to maintain his burden of proof in illustrating a compensable disability as a result of said [toxic] exposure." Hebert now appeals the judgment denying his claim. We amend the judgment, and as amended, affirm.
On appeal appellant specifies the following errors:
1. The trial judge committed error in finding that plaintiff failed to demonstrate a compensable disability, and
2. It was error for the trial judge to fail to find that Mr. Hebert was wrongfully discharged because he filed a claim for worker's compensation.

*319 WRONGFUL DISCHARGE:

Appellant argues DOTD violated La. R.S. 23:1361 in terminating his employment. However, this issue is not before us. The Louisiana Supreme Court held in Sampson v. Wendy's Management, Inc., 593 So.2d 336 (La.1992) at 339-40 that "the district court [is] the proper forum in which to bring a claim for retaliatory discharge under LSA-R.S. 23:1361." Therefore, appellant's remedy is to file his claim for retaliatory discharge in the district court.
Although appellant also argues that he has sufficiently placed the state on notice of the claim for retaliatory discharge so as to interrupt prescription, we do not have before us an exception of prescription nor did the hearing officer below. Even assuming such an exception were before us we would be compelled to pretermit a discussion on that issue since the retaliatory claim must be brought in the district court. Sampson, supra.

DISABILITY:
Appellant argues the trial judge erred in concluding he had been exposed to toxic substances but not awarding compensation. He asserts the testimony at trial establishes he was still experiencing effects from that exposure. He contends the trial judge erred in failing to award supplemental earnings benefits.
In Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (1989) the Supreme Court approved the holding in Gaspard v. St. Paul & Marine Insurance Co., 483 So.2d 1037, 1039-40 (La.App. 3rd Cir.1985) wherein the Gaspard court held:
In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage.
In Gaspard "plaintiff's testimony regarding her chronic pain, corroborated by medical testimony, [was] sufficient to make out a prima facie case for entitlement to supplemental earnings benefits." Id. at 1040. In Gaspard the plaintiff testified her activities were restricted because of the pain and she was unable to perform her former duties as a result. Id. at 1041.
In the present case Hebert testified he is unable to do any strenuous work because he gets shortness of breath. When he exerts himself he has to lay down or he will pass out. This also happens to him when the weather changes.
Although Hebert testified he did not know how much he currently makes per year he stated he may have made $500.00 last month. Robert P. Roth, Jr., the district maintenance engineer for DOTD, testified Hebert had been making $984.00 per month with the highway department.
Hebert never indicated whether he was unable "to earn wages equal to ninety percent or more of wages at time of injury" as a result of his shortness of breath. La.R.S. 23:1221(3)(a).
Hebert also testified he had lower back surgery in 1990. He never indicated whether he earned reduced wages as a result of consequences related to his back or to shortness of breath. That failure coupled with his uncertainty as to his current wages supports the hearing officer's conclusion that Hebert did not make "out a prima facie case of entitlement to supplemental earnings benefits." Daigle, supra at 1007.
Furthermore, we find the hearing officer's factual finding that Hebert was not disabled to be supported by the record. "On appellate review, the trial court's factual findings in workmen's compensation cases are entitled to great weight ... Reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable." Ducote v. J.A. Jones Const. Co., 471 So.2d 704, 706 (La.1985).
The testimony at trial set forth the following.
Hebert was exposed to Paraquat poison while spraying without adequate protection. He first sought treatment on March 26, 1990 when he was seen by Dr. Milburn E. Calhoun. On that date his blood sample showed "75 mg/L for Paraquat." By April 2, 1990 his blood level for Paraquat was "O."
*320 On April 2, 1990 Hebert began having shortness of breath. X-rays taken by Dr. Calhoun showed a fibrotic strand. Hebert was referred to Dr. Thomas Hayden Grimstead, an expert in pulmonary medicine. Dr. Grimstead's partner, Dr. Eugene B. Rosenberg, first saw Hebert April 6, 1990.
Dr. Grimstead testified there was no question that Hebert had Paraquat poisoning. He found some abnormal pulmonary function changes.
He gave his opinion solely from a pulmonary standpoint. The findings, although abnormal, were not severely abnormal so as to "prohibit somebody from returning to work." As of July, 1991 there was "mild obstruction" in his lungs. He did not think mild dysfunction would cause shortness of breath upon exertion. However, he could not answer whether Paraquat in the tissues could cause this symptom. That would be for a toxicologist to determine.
He wrote a letter stating he believed Hebert could return to work effective September 10, 1990. He explained, however, that this was from a pulmonary standpoint.
Dr. Rosenberg's report dated April 9, 1990 was introduced. He stated the following.
Hebert got an unknown amount of Paraquat on his skin. He interpreted the "O" reading of Paraquat to mean "either the agent was excreted from the body or it settled in the tissues." He described chest x-rays taken March 26, 29 and April 2 as follows:
The first film shows plate-like atelectasis of the right middle lobe and then on subsequent films has shown partial clearing, but even on a later film he still had some streaking in the right middle lobe.
His pulmonary function tests showed "mild fixed obstruction and a diffusion capacity reduced to 58% of predicted."
He further stated:
I cannot truly relate Mr. Hebert's shortness of breath to his paraquat exposure as he did not apparently have any direct inhalation, but I cannot argue with the fact that he had x-ray changes at the time of exposure that have only partly cleared. He has not smoked in many years so I cannot blame his obstructive findings on that. I have given him a Proventil Inhaler to use every 4 hours as needed to see if it helps him symptomatically and we would recommend that he have follow-up pulmonary function tests and an x-ray in six weeks to see if the lesion has cleared and to see if there is any lasting pulmonary function impairment. In the meantime, I see no problem with him returning to work as long as he has no further exposure to paraquat ... I do not know whether or not he is at risk for any long-term consequence of paraquat exposure and I do not know if anybody can answer this question for him. I told him only a toxicologist would be qualified to answer that question and to determine whether or not he has dangerous levels of paraquat or other herbicidal poisons in his tissues.
There is uncontroverted medical testimony that Hebert has a lung dysfunction caused by paraquat. The Material Safety Data sheet entered into evidence further reports that Paraquat
may be harmful or fatal if absorbed through skin or inhaled ... Signs and symptoms following ingestion include a burning sensation of the mouth and tongue followed by vomiting (diarrhea and retching). In serious poisoning there may be 2-3 weeks during which transient kidney failure and liver complications may be seen along with Progressive pulmonary changes... [emphasis added].
Both Dr. Grimstead and Dr. Rosenberg stated that only a toxicologist could tell whether Hebert was at risk from long-term consequences from his exposure. Dr. Rosenberg also recommended Hebert be followed up to determine whether he has "lasting pulmonary impairment."
While we find ample evidence to support the trial judge's conclusion that Hebert does not presently suffer from a compensable disability we note that the dismissal of Hebert's claim should be without prejudice. Hebert has proven lung dysfunction from exposure to Paraquat. There may be long term consequences of that exposure. Claims such as this, for an occupational disease, are *321 to be dismissed without prejudice. LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779, 782 (La.1967).
La.R.S. 23:1031.1(E) now provides:
All claims for disability arising from an occupational disease are barred unless the employee files a claim with his employer within six months of the date that:
(a) The disease manifested itself.
(b) The employee is disabled from working as a result of the disease.
(c) The employee knows or has reasonable grounds to believe that the disease is occupationally related.
Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.
The Louisiana Supreme Court in interpreting the earlier four-month bar, which is now a six-month bar, explained in LaCoste v. J. Ray McDermott & Co., 250 La. 43, 193 So.2d 779, 782 (La.1967):
It is important to note, in construing the statute, that the four month period of peremption operates as a bar only to claims for "disablement." An employee who is not disabled, although he knows he has contracted an occupational disease, is not required under a proper interpretation of the peremption provision to file his claim within four months of the date he was aware he contracted the disease. On the contrary, it is only when he becomes disabled that the disease manifests itself and the four month period runs from that time because, unless he is disabled, he has no cause of action for recovery of compensation... [citations omitted].
Recently, the second circuit noted in Austin v. Howard Discount Stores, Inc., 569 So.2d 659 (La.App. 2nd Cir.1990) at 662 n. 1 that the "LaCoste definition of disability remains relevant" since "[d]espite comprehensive changes to the Worker's Compensation Act, this Subsection [La.R.S. 23:1031.1] has remained intact since its original enactment in 1952."
Accordingly, for reasons stated, we amend the judgment and order that Hebert's worker's compensation claim be dismissed without prejudice, and, as amended, we affirm the judgment.
AMENDED, AND AS AMENDED AFFIRMED.