STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-0340

JAMES SHARP

VERSUS

LANDSCAPE MANAGEMENT SERVICES

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 03
PARISH OF CALCASIEU, NO. 09-10265
HONORABLE SAM LOWERY
WORKERS' COMPENSATION JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Jimmie C. Peters, Judges.

AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.

Paul J. Cox
Cox, Cox, Filo, Camel & Wilson
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
COUNSEL FOR PLAINTIFF/APPELLEE:
 James Sharp

H. Douglas Hunter
GUGLIELMO, LOPEZ, TUTTLE,
HUNTER & JARRELL, L.L.P.
P. O. Drawer 1329
Opelousas, LA 70571-1329
(337) 948-8201
COUNSEL FOR DEFENDANT/APPELLANT:
 Landscape Management Services and
 Bridgefield Casualty Insurance Company

PETERS, J.

The defendants, Landscape Management Services and its insurer, Bridgefield Casualty Insurance Company, appeal the judgment of the workers' compensation judge (WCJ) in favor of the plaintiff, James Sharp, retroactively reinstating his temporary total disability benefits and awarding him penalties and attorney fees. For the following reasons, we affirm the award of penalties and attorney fees, but reverse the award of temporary total disability benefits and render judgment converting the temporary total disability benefits to supplemental earnings benefits based on a zero earning capacity.

## DISCUSSION OF THE RECORD

There is no dispute but that Mr. Sharp suffered a work-related injury to his lower back on February 28, 2007, while employed as a landscape laborer for Landscape Management Services (Landscape Management). He underwent a microdiscectomy on July 31, 2007, which was performed by Dr. John Raggio, a Lake Charles, Louisiana neurosurgeon. At some point after the surgical procedure, Dr. Raggio retired from practice and Mr. Sharp commenced treatment with Dr. Ricardo Leoni, a Lafayette, Louisiana neurosurgeon.

Dr. Leoni saw Mr. Sharp professionally on five occasions, commencing on June 12, 2008, and ending on November 6, 2008. Based on his examinations of the patient, Dr. Leoni concluded that Mr. Sharp was in need of additional surgical intervention and recommended that he undergo an L4-5 laminectomy with medial facetectomy and foraminotomies at L3-4, L4-5, and L5-S1 and a possible fusion. When Mr. Sharp expressed a hesitancy to undergo additional surgical procedures, Dr. Leoni recommended that he undergo conservative treatment by a Lake Charles rehabilitation doctor.

In January of 2008, while Mr. Sharp was still under Dr. Leoni's care, Matthew Richard, the adjustor handling the case on behalf of the employer and insurer, retained McNabb Rehabilitation Services of Lafayette, Louisiana, to provide vocational rehabilitation services to Mr. Sharp. Blake Stevens, a vocational rehabilitation counselor with McNabb Rehabilitation Services, obtained Mr. Sharp's file on January 28, 2008, and reviewed the medical history available to him at that time. Included within that medical history was a December 2007 functional capacity evaluation (FCE) which had been ordered by Dr. Raggio. The finding of that evaluation was that Mr. Sharp should be restricted to light duty requiring a maximum lifting of twenty pounds.

Mr. Stevens met with Mr. Sharp on March 25, 2009, in Lake Charles, Louisiana, and interviewed him concerning his work and education history. During the interview, Mr. Stevens learned that Mr. Sharp graduated from Fenton High School in 1979, and twelve years later, completed approximately one and one-half months of electronic training at Sowela Technical Institute in Lake Charles. Mr. Sharp had worked on and off for Landscape Management for approximately fifteen years before the accident, working primarily as a laborer/delivery person. Specifically, his entire work career amounted to his employment with Landscape Management and another landscape company, as a farm hand, and as an industrial laborer in construction work. Mr. Stevens was also able to ascertain that Mr. Sharp had basic mathematic skills; that he owned a home computer and was able to navigate the Internet and Windows; and that his work history was limited to that of a heavy duty work level laborer.

With regard to Mr. Sharp's employment with Landscape Management, Mr. Stevens learned in the interview that Mr. Sharp's duties included picking up and delivering sand, gravel, soil, and plants; and operating a flatbed truck while

2

traveling to and from wholesalers in Forest Hill, Louisiana, and delivering to customers. His duties required him to life items weighing between ten and one hundred pounds.

Approximately one month after Mr. Stevens met with Mr. Sharp, Dr. Leoni ordered a second FCE addressing Mr. Sharp's abilities. This April 2009 FCE restricted Mr. Sharp to sedentary to light duty level tasks and limited his lifting ability to a maximum of ten pounds.

Based on the information he had available to him, Mr. Stevens concluded that no additional vocational testing was required of Mr. Sharp, and he determined that, although he lacked secretarial skills, Mr. Sharp demonstrated semi-skilled intelligence, general education development levels, and transferable skills. Subsequent to the April 2009 FCE, Mr. Stevens performed a labor market survey and contacted approximately thirty potential employees in an effort to fit a job opportunity to Mr. Sharp's skills and limitations. In July of 2009, he was finally able to identify two such employment positions that seemed to be acceptable. Both positions, one with Centennial Wireless and the other with Payday Loans, were customer service representative positions and were of a sedentary nature. Both were full-time positions and paid up to $10.00 per hour depending on the applicant's experience. Believing that Mr. Sharp met the requirements of these entry-level positions, Mr. Stevens sought confirmation from Dr. Leoni that Mr. Sharp could perform these jobs. Dr. Leoni approved the positions on August 18, 2009, and Mr. Stevens confirmed with the potential employers that the positions were still open. He then notified Mr. Sharp of the opportunities. Mr. Sharp received the notification letter on August 20, 2009, that the positions were available and that Dr. Leoni had approved them for him.

3

In response to Mr. Stevens' efforts, Mr. Sharp applied for both positions. Payday Loans rejected him because of his lack of experience, and Centennial Wireless informed him that it had no position available for him. He did not notify Mr. Stevens of the rejections. Instead, he began to inquire about the availability of similar employment on his own. Specifically, he applied for employment at Goodwill, Salvation Army, Kmart, Ryan's Steakhouse, Kroger Grocery Store, Albertsons, and two different Wal-Mart locations. He did not meet the physical requirements for the forklift position at Goodwill, found that there were no openings at Salvation Army, and received no response from the other potential employers. Thereafter, he continued to update his applications to Kmart, Wal-Mart, Albertsons, and Kroger Grocery Store.

Despite the fact that Dr. Leoni did not approve the two positions located by Mr. Stevens until August 18, 2009, Mr. Richards caused Mr. Sharp's TTD benefits to be terminated on August 13, 2009. Landscape Management and its insurer then began paying Mr. Sharp SEBs based on an earning capacity of $10.00 per hour. Neither Mr. Stevens nor Mr. Richards ever followed up to see if Mr. Sharp obtained employment with Payday Loans, Centennial Wireless, or any other potential employer.

On November 30, 2009, Mr. Sharp filed a disputed claim for compensation against Landscape Management and Bridgefield Casualty Insurance Company, seeking reinstatement of his TTD benefits, penalties and attorney fees based on Landscape Management's termination on his TTD benefits, relief in a dispute over the recommended surgery and their failure to reimburse him for his medical travel mileage. Landscape Management and its insurer responded to the claim by asserting that the termination of TTD benefits was based on the fact that the

4

vocational rehabilitation services provided to Mr. Sharp led to an offer of work and the resultant reduction in benefits based on the availability of wages.

After a trial on the merits, and after taking the matter under advisement, the WCJ rendered oral reasons, finding that Landscape Management had improperly converted Mr. Sharp's TTD benefits to SEBs as it failed to prove that the two positions at issue were actually available at the time Mr. Sharp applied for them. Based on this finding, the WCJ ordered Mr. Sharp's TTD benefits retroactively reinstated as of August 13, 2009, and awarded him $2,000.00 in penalties and $7,500.00 in attorney fees. The WCJ executed a judgment to this effect on December 16, 2010.

Landscape Management appeals from this judgment, raising four assignments of error:

I.     The trial court committed manifest error when it awarded James Sharp temporary total disability indemnity benefits.

II.    The trial court committed manifest error in finding that James Sharp met his burden of proving that he could not earn 90% of his pre-injury wages.

III.   The trial court committed manifest error in finding that the defendants did not tender "available" jobs to James Sharp.

IV.    The trial court committed manifest error in awarding penalties and attorney's fees.

**OPINION**

The only issue addressed in the trial on the merits was whether Landscape Management improperly converted Mr. Sharp's TTD benefits to SEBs. The law pertaining to SEBs was recently set forth by the supreme court in *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, pp. 4-6 (La. 1/9/11), 56 So.3d 170, 174-75:

> "The purpose of [SEBs] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident."

5

*Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556. An employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks, supra at 556. "In determining if an injured employee has made out a prima facie case of entitlement to [SEBs], the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." *Daigle v. Sherwin-Williams Co.*, 545 So.2d 1005, 1009 (La.1989) (quoting *Gaspard v. St. Paul Fire and Marine Ins. Co.*, 483 So.2d 1037, 1039 (La.App. 3 Cir.1985)). It is only when the employee overcomes this initial step that the burden shifts to the employer to prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employee's community or reasonable geographic location. La. R.S. 23:1221(3)(c)(i); *Banks, supra* at 556; *Daigle, supra* at 1009.

The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. *Daigle, supra* at 1007. Further, factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Freeman, supra* at 737-38; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). "In determining whether a [WCJ's] finding that an employee has met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine all evidence that bears upon the employee's inability to earn 90% or more of his pre-injury wages." *Seal v. Gaylord Container Corp.*, 97-0688 (La.12/2/97), 704 So.2d 1161, 1166.

In awarding Mr. Sharp TTD benefits, the WCJ rendered the following oral reasons for judgment:

The controversy centers on Mr. Sharp's contention that his employer's workers' compensation insurance carrier inappropriately and illegally terminated his temporary total disability payments on August 13, 2009. For its part, the defendant insisted that termination action was justified because he simply refused to accept suitable employment which was offered to him.

6

In essence, Mr. Sharp argued that he met his burden of proving that he could not earn 90 percent of his pre-injury wages because he could no longer work as a laborer and none of the jobs to which he was referred by the insurer were actually available within the meaning of the R.S. 23:1221[(3)(c)(i)].

Mr. Sharp's live testimony leaves little doubt that under the very best of circumstances, both his viability and his desirability in the job market are markedly limited. He is a landscaper, and a disabled one at that. He has two herniated discs in his back.

It would take a very expansive view of the situation here to envision Mr. Sharp doing anything clerical or financial, but that's not the point. The testimony shows clearly that the jobs which the insurer recommended to him were simply not available

It appears from the evidence that Mr. Sharp made an honest effort to secure employment at both businesses but was rejected at both places. The term "energetically" decidedly does not apply to the insurer's efforts to find suitable employment for this rather limited individual.

For reasons patently obvious as a result to any reader of the trial transcript, the Court orders that Mr. Sharp's temporary total disability indemnity benefits be restored retroactive to August 13, 2009. Penalties are assessed at $2,000 and attorney's fees are $7,500.

There is no question that Mr. Sharp sustained a work-related injury to his lower back while employed as a landscape laborer for Landscape Management, and that initially he was entitled to TTD benefits. In fact, the parties stipulated that he received TTD benefits at the rate of $269.08 from the date of his injury through August 12, 2009. With regard to the continuation of benefits, Mr. Sharp bears the burden of establishing by clear and convincing evidence, unaided by any presumption of disability, that he is physically unable to engage in any employment as a result of a work-related injury in order to be awarded TTD benefits. La.R.S. 23:1221(1). Disability can be proven by both medical and lay testimony, and the WCJ must weigh all of the evidence in order to determine whether the employee has satisfied his burden of proof. *Jack v. Prairie Cajun Seafood Wholesale*, 07-102 (La.App. 3 Cir. 10/3/07), 967 So.2d 552, *writ denied*,

7

07-2388 (La. 2/15/08), 976 So.2d 178. The WCJ's finding of disability is a factual determination that is subject to the manifest error analysis. *Id.*

In this case, the record establishes that based on the April 18, 2009 functional capacity evaluation, Dr. Leoni concluded that Mr. Sharp could perform sedentary to light duty work. Thus, it was not error for Mr. Richard to convert Mr. Sharp's benefits to SEBs, and the WCJ erred in reinstating Mr. Sharp's TTD benefits. However, once it was determined that SEBs were the appropriate benefits payable, the burden shifted to Landscape Management to establish by a preponderance of the evidence that not only was Mr. Sharp able to perform a certain job, but that the job was offered to him and was available to him within his community or reasonable geographic location. *Poissenot*, 56 So.2d 170. Landscape Management failed in this respect. The two positions identified by Mr. Stevens were within Mr. Sharp's physical limitations, but neither position was ever offered to him. Thus, while the weekly payments may be classified as SEB payments, they are to be paid based on a zero earning capacity. Accordingly, the judgment of the WCJ reinstating Mr. Sharp's TTD benefits is reversed, and we now render judgment in favor of Mr. Sharp awarding him SEBs as of April 18, 2009, paid based on a zero earning capacity.

Finally, Landscape Management appeals the WCJ's award of penalties and attorney fees to Mr. Sharp. The decision to cast an employer with penalties and attorney fees is a question of fact which will not be reversed on appeal absent manifest error. *Ashworth v. Administaff, Inc.*, 10-318 (La.App. 3 Cir. 10/6/10), 48 So.3d 1178. The failure to provide the payment of workers' compensation indemnity benefits will result in an assessment of penalties and attorney fees pursuant to La.R.S. 23:1201(F), unless the employee's claim is reasonably

8

controverted or the nonpayment resulted from conditions beyond the employer's control.

In this instance, we find no error in the WCJ's assessment of penalties and attorney fees based on Landscape Managements payment of Mr. Sharp's indemnity benefits at an incorrect rate. Landscape Management reduced Mr. Sharp's indemnity benefits to SEBs based on its determination that either of the two customer service representative positions were available to him. When this turned out not to be the case, it did nothing further in assisting Mr. Sharp to find work. Mr. Stevens, other than meeting with Mr. Sharp once and then identifying the two positions, made no effort to contact Mr. Sharp in a continual effort to assist him. When questioned by the WCJ, Mr. Stevens opined that communication is a two-way street and that he felt that his clients should call him to update their progress in obtaining employment. Accordingly, we affirm the WCJ's award of penalties and attorney fees to Mr. Sharp.

## DISPOSITION

Based on the foregoing, the judgment of the trial court awarding penalties and attorney fees to Mr. Sharp is affirmed; the judgment reinstating Mr. Sharp's TTD benefits is reversed; and judgment is now rendered awarding Mr. Sharp SEBs at a zero earning capacity rate as of April 18, 2009. The costs of this appeal are assessed to the defendants, Landscape Management Services and Bridgefield Casualty Insurance Company.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**

9