480 So.2d 477 (1985)
Herman MILLER, Jr.
v.
PAN AMERICAN WORLD AIRWAYS, INC. and Travelers Insurance Company.
No. 85-CA-407.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1985.
Writ Denied February 21, 1986.
*478 Jerome Friedman, Metairie, for Herman Miller, Jr., plaintiff-appellant.
Carl L. Aspelund, New Orleans, for Pan American World Airways, Inc. and Travelers Ins. Co., defendants-appellees.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
BOUTALL, Judge.
This is a worker's compensation case. From a judgment awarding benefits for a scheduled injury under LSA-R.S. 23:1221(4)(p), the plaintiff has appealed.
The plaintiff, Herman Miller, Jr., filed suit against his former employer, Pan American World Airways, Inc., and its insurer, Travelers Insurance Company, for injuries that occurred on September 3, 1982. Miller had been employed continuously by Pan American since 1967 and at the time of the injury was senior service agent. He performed clerical and supervisory duties in connection with loading and unloading airplanes at the New Orleans International Airport. He hurt his neck while carrying a heavy box of teletype paper from a storage area and trying to catch the box as it started to fall. He was treated conservatively by a neurosurgeon for a short time but did not improve, and on October 12, 1982 Dr. William Johnston performed surgery, removing a ruptured disc and fusing the two adjacent vertebrae. Miller's recovery was uncomplicated and Dr. Johnston discharged him on January 13, 1983. While Miller was recovering from surgery at home, on October 29, 1982, Miller signed a request to accept a special voluntary lay-off/furlough that had been negotiated by the union with Pan American. At that time the company was having to cut back on personnel and provided certain severance benefits under the voluntary lay-off. After being discharged by the doctor, Miller filed for unemployment compensation and looked for a job with the other airlines, sheriff's office, and the National Guard. He was hired by the Guard in November, 1983 as a recruiter but was terminated on December 31, 1984 for failure to meet his quota of new recruits. He was unemployed at time of trial and still unemployed when appellate brief was filed.
Miller filed suit against Pan American and Travelers on November 28, 1984, claiming permanent total disability. The petition alleged that despite amicable demand the employer had paid only a lump sum of $3,672 for a "scheduled permanent, partial injury, for a period of 100 weeks," while the correct amount should have been two-thirds of his weekly pay of $565, or the *479 statutory maximum of $204 per week. For failure to pay additional weekly benefits, the plaintiff demanded statutory penalties and attorney's fees. Trial was held on January 2, 1985 and judgment rendered January 23, holding that the plaintiff was entitled to benefits of $204 per week for 66 weeks, subject to credit for previous compensation paid, plus court costs. Penalties and attorney's fees were denied. From that judgment the plaintiff has appealed.
The issues raised by the appellant are whether the plaintiff should have been found to be permanently totally disabled, or alternatively, whether he proved permanent partial disability, and whether he should be awarded interest on past due payments.
Permanent Total Disability. The appellant bases his claim of permanent total disability on the "odd lot" doctrine. Because of his age, education, limited work experience, and physical problems and because he can work only in substantial pain and with the help of other employees, he is an odd lot worker, whose ability to compete in the market place is greatly diminished.
Miller testified that after he was discharged by Dr. Johnston he had a little discomfort in turning his neck and had to turn his shoulder to look around. He had occasional headaches. When asked later about headaches he said they were frequent and that he took aspirin three times a day and occasionally took the arthritis medicine, Moprin. He had trouble driving while working for the National Guard and sometimes had a fellow recruiter take turns driving. He had not consulted a physician since January, 1983. The plaintiff's wife testified that he had pain in the neck, terrible headaches, back ache, and leg problems. She said that he was very stoic, complained little, but she could tell he was in pain because of the amount of medicine he took, his restlessness and difficulty sleeping, and his irritability. At home he was no longer able to cut grass or do other household chores. Miller testified that he had had two previous injuries on the job but had returned to work as soon as the physician discharged him.
In the case of Culp v. Belden Corp, 432 So.2d 847 (La.1983), the Supreme Court held that to make a prima facie case of substantial pain, the claimant must prove that the pain is "substantial, serious, intense, and or severe." The plaintiffs described in Culp lived and attempted to work in almost continual pain. While Miller may suffer some residual discomfort, the record does not support a finding of total disability because of substantial pain. Miller's case does not fit the usual pattern of an odd lot worker as regards his work experience and education. Although he had only completed twelve grades of formal education, he was not limited to manual labor, had performed very well over many years in clerical positions, and in fact found employment after his discharge from surgery. Miller's supervisor at Pan American testified that his old job was available to him if he had chosen to return instead of accepting the voluntary lay-off. Miller testified to the contrary, that he was given no choice. We note further that Miller admitted at trial that the drop in production which resulted in his being fired by the National Guard was not due to his physical problems, although the work was tiring, but to a reorganization of the Guard's recruiting program. His work had been deemed satisfactory before the changes were made.
Permanent Partial Disability. Miller argues that if the court does not find him totally disabled, it should find that he is eligible for benefits under two classifications, permanent partial disability, LSA-R.S. 23:1221(3), and the specific injury schedule, LSA-R.S. 23:1221(4)(p).[1] He *480 should then be allowed to recover under the provision that affords him greater compensation. See Jacks v. Banister Pipelines of America, 418 So.2d 524 (La. 1982); Patin v. Continental Cas. Co., 424 So.2d 1161 (La.App. 1st Cir.1982), writ denied 429 So.2d 145 (La.1983). The distinction between the classifications is that for permanent partial disability there must be an appreciable diminution in the worker's ability to perform in his regular job or a similar one, while for the permanent impairment of a physical function no disability need be found. Generally, the longer period of benefits provided under permanent partial disability is more advantageous. Mayes v. Louisiana-Pacific Corp., 379 So.2d 46 (La. App. 3rd Cir.1979), writ refused 381 So.2d 1232 (La. 1980).
As the question of disability is a factual one, the finding of the trier of fact must be given great weight. Culp v. Belden Corp, supra. The trial judge in this case provided no reasons for judgment but concluded that Miller was entitled to payment under the specific injury schedule. The record supports a finding that Miller was not permanently partially disabled in performing duties of his same or similar position. The medical testimony of Dr. William Johnston, Jr., the treating physician, indicated that Miller's only neurological residual was a decreased perception of pain in his left thumb, overall impairment of the body of 10%, and 15 to 20% limitation of motion in the neck. Other than lifting objects weighing more than 75 pounds, the physician felt Miller could do anything he had done in the past. Accordingly, we affirm the finding that Miller is entitled to benefits under LSA-R.S. 23:1221(4)(p).
In calculating the compensation due for impairment of a physical function, the trial judge may award "such compensation as is reasonable and in proportion to the compensation herein-above specifically provided in the cases of specific disability." The determination of an appropriate award based on the two criteria is not an easy one and much discretion is left to the trial judge. The jurisprudence has indicated that any amount between the statutory minimum and maximum may be awarded. Campbell v. Baker, Culpepper & Brunson, 382 So.2d 1046 (La.App. 2nd Cir.1980), writ denied 385 So.2d 793 (La.1980); Woodard v. Cole Chevrolet, Inc., 444 So.2d 1367 (La.App. 2nd Cir.1984). In the case before us the trial judge inadvertently awarded the statutory maximum compensation for 66 weeks, or two-thirds of the 100 weeks period set out in section 4(p) of the pre-1983 statute. We assume that the judge considered all the evidence and determined that Miller had more serious permanent impairment of the neck and of the body as a whole than the physician's estimate suggested and applied a factor of 66 percent to the number of weeks rather than to the amount of compensation allowed. Although section 4(p) of the statute as amended in 1983 provides for compensation for a period "not to exceed one hundred weeks," the pre-1983 statute provided for a specific duration of 100 weeks. Assuming that the court found the impairment to be two-thirds or 66 2/3% and applying that factor to Miller's wages of $504 per week, we arrive at $224, which exceeds the maximum of $204. Accordingly, we correct and *481 amend the judgment to award the plaintiff compensation benefits of $204 per week for one hundred weeks. Although we agree with the court's denial of the demand for penalties and attorney's fees, the plaintiff is entitled to an award of legal interest upon his weekly benefits from date due. Lennix v. St. Charles Grain Elevator Co., 439 So.2d 1249 (La.App. 5th Cir.1983).
For the reasons stated above, the judgment of the trial court is amended so as to award the plaintiff compensation benefits in the amount of $204 per week for one hundred weeks plus legal interest from date payments are due, subject to a credit for compensation previously paid. In all other respects, the judgment appealed from is affirmed.
Costs of this appeal are assessed against appellee.
AMENDED AND AFFIRMED.
NOTES
[1] At the time of the accident, LSA-R.S. 23:1221(3) read in pertinent part:

"(3) For injury producing partial disability of the employee to perform the duties in which he was customarily engaged when injured or duties of the same or similar character, nature, or description for which he was fitted by education, training, and experience, ..." and provided for compensation of 66 2/3% of the difference between the pre-injury wage and the current wage, if it is lower, for 450 weeks (for injury occurring on or after September 1, 1977).
LSA-R.S. 23:1221(4)(p) read:
"(p) In cases not falling within any of the provisions already made, where the employee is seriously permanently disfigured about the face or head, or where the usefulness of a physical function is seriously permanently impaired, the court may allow such compensation as is reasonable and in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-six and two-thirds per centum of wages during one hundred weeks."
Both awards were then subject to the maximum and minimum amounts set out in LSA-R.S. 23:1202, which for the date of Miller's injury was $204.
[In the 1983 amendment the provision for a minimum was eliminated for compensation under sections (3) and (4).]