545 So.2d 1005 (1989)
Michael T. DAIGLE
v.
SHERWIN-WILLIAMS COMPANY.
No. 89-C-0251.
Supreme Court of Louisiana.
June 19, 1989.
Rehearing Granted September 11, 1989.
Edmond Harris, Heisler & Wysocki, New Orleans, for applicant.
Temple Stephens, New Orleans, for respondent.
*1006 MARCUS, Justice.[*]
Michael T. Daigle was injured on May 12, 1984 while working in his capacity as store manager for Sherwin-Williams Company at the St. Charles Avenue store in New Orleans. The injury occurred when he was lifting a case of paint and turned to look at someone who had called to him. As a result of the injury, plaintiff suffered a slipped disc and subsequently underwent surgery for an anterior cervical fusion. The treating physician felt that Daigle had incurred a permanent ten to fifteen percent anatomical disability due to the injury and surgery. Daigle was instructed by the doctor not to lift, push, or pull anything weighing more than fifty pounds and not to engage in any activity that involved repeated hypertension of the neck.
Plaintiff was initially hired by Sherwin-Williams in January of 1983 as manager of the Hammond store. He remained in that position until January of 1984 when he was promoted to the position of manager of the St. Charles Avenue store in New Orleans. The manager's duties included carrying paint to customers' cars and unloading shipments of paint and supplies to the warehouse adjoining the store. Various cases of paint and containers of sheetrock "mud" weighed in excess of sixty pounds. At the time of the injury, Daigle was earning $836 every two weeks.[1] In addition to his salary, as manager he was entitled to a two-part incentive bonus plan. The first part was based on sales volume of the store and paid on a semi-annual basis. The second part of the incentive plan was a profit incentive based on a profit goal that was set for the particular store and was also paid on a semi-annual basis. Daigle was paid $3,675 on December 31, 1983 and $7,432 on March 10, 1984 as part of the incentive plan.
Sherwin-Williams, in accordance with the recommendation of the director of the office of worker's compensation administration, paid Daigle $245 per week from May 13, 1984 through August 31, 1984 based on an average weekly wage of $418 or $836 every two weeks. This sum represented temporary total disability benefits. After the injury, Sherwin-Williams paid Daigle his regular pay ($836 biweekly) through September 8, 1984.[2] From October of 1984 to June of 1985, plaintiff owned and operated his own paint store in Hammond. He testified that his take-home pay amounted to barely $600 per month. That store closed due to a contract dispute with the franchisor. Plaintiff held no job from June until December of 1985. He then worked for two different carpet stores, earning $250 per week and $40 per week, respectively, until February of 1986 when he accepted a position with Canon Films as a scenic artist, which position he held at the time of trial. Daigle started with Canon earning about $300 per week, but had worked up to a salary of $800 per week by April of 1987. His job, however, was not steady but rather ran from picture to picture.
Michael Daigle brought this suit against Sherwin-Williams Company. He alleged in his petition that he was permanently and totally disabled; and in the alternative, that he was partially permanently disabled from performing his former employment. Defendant answered, generally denying the allegations of plaintiff's petition and asserting that he had been paid all benefits to which he was entitled pursuant to the Louisiana Worker's Compensation Statute. After trial, the judge denied plaintiff further benefits and dismissed his suit. The court of appeal affirmed, finding that the trial judge "properly found that plaintiff was not entitled to supplemental earnings benefits."[3] Plaintiff applied to this court for writs, asserting that the courts below erred in excluding bonuses received by him during the twenty-six (26) week period prior to the date of his accident pursuant to La.R.S. 23:1021(10)(d). We granted a writ of certiorari.[4]
It is well settled that the provisions of the worker's compensation law must be given a liberal interpretation. Lester v. Southern Casualty Insurance Company, 466 So.2d 25 (La.1985). The particular statute at issue in the instant case is La.R.S. 23:1221(3), the supplemental earnings benefits provision.[5] "The threshold prerequisite *1007 to the recovery of supplemental earnings benefits, as set forth in subparagraph (3)(a) is that the employee's injury result in his `inability to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury.'" Payne v. Country Pride Foods, Ltd., 525 So.2d 106, 109 (La.App. 3d Cir.1988). The injured employee thus bears the burden of proving by a preponderance of the evidence that the injury resulted in his inability to earn that amount. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. "In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037, 1039 (La.App. 3d Cir.1985). In order for the employee to meet this threshold burden of proof, it is necessary under the statute to establish his average monthly wages at the time of the injury (pre-injury wages). The statute further provides that these wages shall be computed as defined in La.R.S. 23:1021(10)[6] and then multiplying the resulting weekly wage figure by four and three-tenths.
In determining the amount of preinjury wages an employee earned, "[a]ny *1008 money paid the employee which can be regarded as remuneration or reward for his services should be included in fixing his compensation, irrespective of whether or not the payment was in the form of wages." Malone and Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation § 324 at 93 (1980). A problem nevertheless arises in trying to fit an employee such as Daigle into one of the narrowly drawn categories of La.R.S. 23:1021(10). The testimony at trial was unequivocal that Daigle was a salaried employee. He was paid a fixed amount on a biweekly basis. In addition he received certain bonuses. This situation is seemingly outside of the statutory categories. Malone and Johnson advocate using a combination of provisions when the wages do not fit neatly into one. Malone and Johnson, supra at 91. The statute contemplates reducing whatever wages were earned to a weekly basis. Thus, Daigle's biweekly salary can be easily divided by two to arrive at a weekly wage. His incentive bonuses, however, fit more easily under subsection (d), that is, "Other wages. If the employee is employed on a unit, piecework, commission, or other basis." These bonuses should be calculated according to that formula. Daigle received two incentive bonuses in the twenty-six week period immediately preceding his injury and both should be considered in computing his wages. The resulting figures from these two calculations should then be added together to obtain Daigle's true weekly wages.[7] Thus, at the time of the injury Daigle was earning $418 per week ($836 divided by two) plus $341.75 ($11,107 in bonuses divided by 130 days work[8] and multiplied by four) to equal $759.75 (average weekly wages). This figure is then plugged into 23:1221(3)(a) and multiplied by four and three-tenths to equal $3,266.93 (average monthly pre-injury wages). Mr. Daigle successfully bore his burden of proving his disability and resultant inability to earn at least 90% of his pre-injury wages. Testimony from the treating physician as well as from the doctor who examined Daigle at Sherwin-Williams' request indicated that he suffered a ten to fifteen percent anatomical disability and should not lift, push, or pull anything more than fifty pounds. As manager of the Sherwin-Williams paint store, he was expected to do a considerable amount of lifting and carrying, often of loads in excess of his fifty pound limitation. It follows that it is likely that he would encounter the same requirements and accompanying problems in another such job. In addition, the record revealed that he had made several attempts at gainful employment. Although plaintiff's work history was in hardware and in paint stores, he attempted to find work outside of his past field. Daigle established at trial that he was disabled due to his injury and that, for the greater part of the period after termination of temporary total disability benefits, he was earning less than $2,940.24 (90% of $3,266.93) each month.
Once the plaintiff has met his initial burden of proving entitlement to supplemental earnings benefits by establishing his job-related disability, the amount of such benefits must be calculated. 23:1221(3)(a) provides that the benefits are "sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and average monthly wages earned or average monthly wages the employee is able to earn." The next step in the analysis requires an examination of what the employee is earning or is able to earn. The statute further explains this analysis in (3)(c)(i). The most logical interpretation of this provision is that the employer, if he wishes to contend that the employee is earning less than he is able to earn, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the *1009 employer's community or reasonable geographic region.[9]
Sherwin-Williams, in order to prove that a job was available to Daigle, procured the services of a vocational rehabilitation expert. This expert interviewed Daigle as well as spoke with his doctor in order to best evaluate Daigle's job capabilities. After his initial analysis, the expert contacted potential employers. He ultimately found four particular jobs appropriate for a person with Daigle's experience, qualifications, and medical limitation. The expert sent two letters to plaintiff's attorney. The first listed the four potential job opportunities and the persons to whom Daigle should apply. The second letter was a follow-up to the first. Although there were no salary figures in either letter to the attorney, the expert testified as to these figures. The first potential job was as insurance salesman with a starting salary of up to $2,400 a month. This salary would be gradually reduced over a three-year period and at that time the person would be strictly on commission. The second potential job was as manager trainee with Radio Shack. The base salary was $180 a week plus 6.25% commission on all sales. A conservative estimate of salary was $300 to $400 a week. The third and fourth potential jobs were as a photographer and paid $50 a day with one company or $3.50 an hour with another company. The expert testified that he contacted the various potential employers and was told by them that each of the jobs was available and that the employers would consider hiring Daigle notwithstanding his physical restrictions. Although the expert testified that the insurance job paid "up to" $2,400 a month, the plaintiff questioned that figure. The expert could not say if any starting salesman had ever been paid the $2,400 or even if there was a range of salary below the $2,400 level. In addition the position of insurance salesman is highly speculative and we are unwilling to find in this circumstance that Daigle was able to earn $2,400 a month. Using the Radio Shack job as a guideline, we find that Sherwin-Williams established that Daigle was able to earn $350 a week by proving that he was physically able to perform that job and it was available to him. Daigle offered no evidence to the contrary. Multiplying this figure by four and three-tenths equals $1,505 which represents the monthly wage Daigle is able to earn. Having made this finding we need not consider the jobs as photographer because he is able to earn a greater amount in the Radio Shack job. Supplemental earnings benefits are determined on a month by month basis.[10] Accordingly, Daigle is entitled to supplemental earnings benefits of no more than sixty-six and two-thirds percent of the difference between $3,266.93 (average monthly wage at the time of injury) and $1,505 (average monthly wage employee is able to earn). This computation results in the amount of $1,174.68 monthly supplemental earnings benefits owed from August 31, 1984 (cessation of temporary total disability benefits) not to exceed a maximum of 520 weeks unless terminated sooner[11] in those months in which Daigle earned less than $1,505. In months that Daigle earned more than $1,505, he is entitled to the sixty-six and two-thirds percent of the difference between his pre-injury monthly wage ($3,266.93) and the amount he actually earned. La.R.S. 23:1221(3)(b). Moreover, when Daigle earned more than 90% of his pre-injury wages ($2,940.24) in any given month, he is not entitled to any supplemental earnings benefits in that month. Because the record is incomplete as to Daigle's monthly wages since the termination of temporary total disability benefits, we consider it appropriate under the circumstances to remand the case to the district court to determine Daigle's monthly wages and to fix the amount of supplemental earnings benefits owed to Daigle in each month consistent with the calculations and findings expressed herein.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed; the case is remanded to the district court to determine *1010 Daigle's monthly wages and to fix the amount of supplemental earnings benefits owed in each month consistent with the calculations and findings expressed herein.
ON APPLICATION FOR REHEARING PER CURIAM
Defendant has applied for a hearing, taking issue only with the amount of the award of monthly supplemental earnings benefits, which is payable when Plaintiff earns less than 90% of his pre-injury wages. Defendant does not, in this application for rehearing, disagree with the conclusion that compensation is owed, or with the calculations used for determining the pre-injury monthly wage. Defendant alleges, however, that this amount exceeds the maximum compensation allowable by LSA R.S. 231202, and should be reduced accordingly. On reflection, we agree and grant rehearing.
LSA R.S. 23:1221(3)(a), regarding supplemental earnings benefits, speaks only of benefits "equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter ...", without reference to a maximum amount payable. § 1202, however, which is applicable to compensation paid "under this Chapter", provides for a maximum compensation, to be determined in accordance with a specified formula. We agree with Defendant that supplemental benefits cannot exceed the maximum compensation rate in effect at the time of Plaintiff's injury, which Defendant contends was $245 per week.[1]
We have not before had an opportunity to consider whether the maximum compensation rate applies to benefits payable under § 1221(3)(a). On several occasions, however, lower courts have rules that § 1221(4)(p), applicable to compensation for the impairment of a physical function, is subject to the maximum rate even though it is not so specified in that section. A similar conclusion can be made with regard to § 1221(3)(a) as this section does not indicate that the maximum rate should not apply. See Campbell v. Baker, Sulpepper & Brunson, 382 So.2d 1046 (La.App.2d Cir. 1980), writ denied 385 So.2d 793 (La.1980); Miller v. Pan American World Airways, Inc., 480 So.2d 477 (La.App.5th Cir.1985); Woodard v. Cole Chevrolet, Inc., 444 So.2d 1367 (La.App.2d Cir.1984).[2]
In our original opinion, we determined that Plaintiff was entitled to an amount of $1,174.58 per month in supplemental earnings benefits (not to exceed a maximum of 520 weeks in those months in which Daigle earned less than the amount we concluded he is capable of earning, i.e. $1,505). This was determined by calculating two-thirds of the difference between his pre-injury wage and his post-injury wage (or that which he is able to earn). This figure exceeds the maximum compensation rate applicable at the time of Plaintiff's injury, and should, therefore, be reduced in all instances to comply with the statutory maximum.
Therefore, the judgment earlier rendered is reinstated subject, however, to the maximum rate as prescribed by LSA R.S. 23:1202. The case is remanded to the district court to determine the amount of compensation payable in accordance with the findings expressed herein.
NOTES
[*] PIKE HALL, Jr., Associate Justice Ad Hoc, sitting for Associate Justice HARRY T. LEMMON.
[1] Daigle's salary was raised from $788 effective April 22, 1984, and was first reflected in his May 19, 1984 paycheck, after the injury.
[2] On August 16, 1984, after his injury, Daigle was paid an incentive bonus of $2,217 for the first half of the year.
[3] 537 So.2d 356 (La.App. 4th Cir.1988).
[4] 539 So.2d 624 (La.1989).
[5] La.R.S. 23:1221(3) provides in pertinent part:

(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
[6] La.R.S. 23:1021(10) provides:

"Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
(iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
(b) Monthly wages. If the employee is paid on a monthly basis, his monthly salary multiplied by twelve then divided by fifty-two.
(c) Annual wages. If the employee is employed at an annual salary, his annual salary divided by fifty-two.
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
[7] This computation is different from our computation in Allor v. Belden Corporation, 393 So.2d 1233 (La.1981). In that case plaintiff's wages were calculated on an hourly basis and his bonuses were concomitantly calculated and included in each weekly paycheck, thus making it unnecessary to separately reduce the bonuses to a weekly basis. Such is not the situation in the instant case.
[8] The record shows that Daigle was normally paid on the basis of eighty hours every two weeks. This computes to a five day work week. Five days a week multiplied by the twenty-six week applicable period equals 130. However, Daigle's payroll records with Sherwin-Williams go back only to December 31, 1983, some six weeks short of the requisite twenty-six weeks. Accordingly, we assumed that he worked the same amount during the missing six-week period.
[9] See Culotta v. The Great Atlantic and Pacific Tea Co., 524 So.2d 259 (La.App. 5th Cir.), writ denied, 530 So.2d 88 (1988); Kreider v. Schulin's Appliance Serv., Inc., 524 So.2d 153 (La.App. 4th Cir.1988); Williams v. Avondale Indus., Inc., 521 So.2d 491 (La.App. 4th Cir.1988); Clark v. Welex, A Halliburton Co., 517 So.2d 1186 (La.App. 3d Cir.), writ denied, 521 So.2d 1170 (1988); Gaspard v. St. Paul Fire & Marine Ins. Co., 483 So.2d 1037 (La.App. 3d Cir.1985).
[10] La.R.S. 23:1221(3)(a). "[S]uch comparison to be made on a monthly basis."
[11] La. R.S. 23:1221(3)(d) and (e).
[1] R.S. 23:1202 provides that "(f)or injuries occurring on or after July 1, 1983, the maximum weekly compensation to be paid under this Chapter shall be seventy-five percent of the average weekly wage paid in all employment subject to the Louisiana Employment Security Law,..." Thus, the principal amount is calculated pursuant to a specified formula. Applicant's assessment of $245 weekly may indeed be correct.
[2] Plaintiff filed a brief in opposition to rehearing, in which he relies on Guidry v. Boh Bros. Constr. Co., 545 So.2d 538 (La.App.5th Cir.1989) in arguing that the maximum rate of compensation does not apply to supplemental earnings benefits. While that does appear to have been the conclusion of the Fifth Circuit on its original hearing, in which it awarded the plaintiff an amount exceeding the maximum rate, the court corrected itself, as we are doing here, on rehearing to apply the maximum rate as prescribed by § 1202.