WATKINS, Judge.
This is a suit for worker’s compensation benefits. The plaintiff appeals a judgment rejecting his demands for supplemental earnings benefits, penalties and attorney fees.
FACTS
On January 11, 1988, the plaintiff, Mr. Edward Smith, was injured while working in the course and scope of his employment as a correctional officer for the Department of Corrections (DOC) at the Louisiana Training Institute (LTI) when an inmate struck him - in the left eye. The injury resulted in a loss of 95% of the plaintiffs vision in his left eye. In accordance with LSA-R.S. 23:1221(4)(o), the State paid compensation to the claimant for ninety-five weeks. Approximately three months after the injury the plaintiff was released from treatment and returned to work for LTI. The plaintiffs doctor recommended that he should avoid any confrontation which would lead to trauma to his eye as it might result in total blindness in that eye. The plaintiff resumed work with LTI as a perimeter security guard, a position which would remove him as far as possible from the inmate population. The perimeter guard was posted outside of the fences which surround the facility and his duties included keeping a surveillance of the grounds and radioing for help if inmates approached the fence. He would also be required to assist with the apprehension of potential escapees. The plaintiff remained in this position until it was discovered by the Administrator of Human Resources, Mr. Zbigniew S. Cypel, that the plaintiff was erroneously placed in the position of perimeter guard. Mr. Cypel expressed this opinion in a letter to Mr. Whit Kling at the Office of Risk Management on February 20, 1990. Mr. Cypel explained that there was no way to guarantee that Mr. Smith would not have physical contact with student offenders in his position because all “[cjorrectional officers have to be able to work any assignment at any post in order to provide for the effective and efficient operation of the state service in fulfilling our obligation to protect the public safety.” Sometime in February, 1990, the plaintiff ceased reporting to work and was allowed to exhaust his sick leave; he was ultimately terminated on June 25, 1990, for exhausting his sick leave. Thereafter, plaintiff collected unemployment compensation benefits through December, 1990. During this time the plaintiff worked with a rehabilitation officer, Jeanette Felps, and attempted to find employment at various state and non-state jobs. The plaintiff testified that he was given a list of possible job opportunities by Ms. Felps and that “the ones that I thought I could most likely handle, I applied for them. But the ones that would cause a risk, I didn’t apply for them_” He also contacted and left applications with the Department of Transportation, the School for the Visually Impaired, The East Baton Rouge Housing Authority, The State Police Department, Department of Wildlife and Fisheries, Governor’s Office of State Buildings, and the Earl K. Long Hospital; there were no available positions which the plaintiff felt were suitable. The plaintiff also sought work at various department and grocery stores; however, he did not place applications with them. Plaintiff was also informed by Ms. Bertha Held, a Vocational Rehabilitation expert, that there were two available positions with the state, one at the School for the Deaf as a Dormitory monitor, and one as an unarmed security guard for Southern University. He did not pursue either job because he perceived that there was a risk of confrontation. He testified that he spoke on the phone with a lady[1] at the School for the Deaf but that he did not talk to the personnel department to see what the job entailed. He also called Southern University and was told there that there was always a risk he could get hit and that they did not want him if he could not perform the full job. The plain-
*1067 tiff did state that he invested money in a business that his wife is managing at their home and that he assists her by taking her to get merchandise.
Ms. Bertha Held testified that she met with the plaintiff on October 25, 1990, and performed a vocational assessment. She determined that he was qualified for noncompetitive reemployment rights and began assimilating information concerning his qualifications and available jobs within the state system which were close to Baton Rouge.[2] She compiled a list of agencies and began contacting them for job availability. She determined that jobs were available with the School for the Deaf and Southern University. The School for the Deaf needed a temporary Dorm counselor assistant, which primarily required assisting the deaf children with their homework. The only qualifications for the position were that the applicant be willing to learn sign language and have a high school education. The position was for evenings and nights and would be a full time job. Although the position was temporary, until May of 1991, Ms. Held thought that it might lead to another position with the school. The position paid between $936.00 and $1,400.00.
The other available job was an unarmed security guard at Southern University, with a salary of $818.00 to $1,227.00 per month. Ms. Held testified that the main duties of the security guard position were traffic control, helping with crowds, and grounds patrol. She stated that there was no police work involved. Ms. Held also testified that she saw no impediment to Mr. Smith obtaining employment.
Doctor Steven Breaud, the plaintiffs doctor, testified by deposition. During questioning he was asked whether he thought the plaintiff could perform the duties of a guard, he replied:
Let me answer that this way, I don’t know what a guard has to do, other than what you and I assume a guard has to do, but on the other hand, I have a lot of patients that I’ve treated and followed and know of their uniocular status, and their occupations, and there is virtually no occupation — well, I wouldn’t say none, but there are very few occupations that one cannot pursue with one eye, okay?
[[Image here]]
Doctor Breaud was also questioned concerning the potential for reinjury to his eye and explained as follows:
A. He has asked me before — I told him to be careful and don’t get hit in that eye, in the eye that was injured, and he said, “Well, I may be — I have to break up a fight or something, and I’m afraid I might get hit in the eye.” Well, he certainly has weak tissue on that side as compared to the good side. Once you have any type of injury to a body structure such as this, it’s going to be weaker than it was before.
[[Image here]]
A. So he’s more susceptible to trauma to that eye, not to the other eye, okay? Q. So, in other words, a trauma situation,—
A. Right.
Q. — that hit him in that eye, would more likely produce blindness than—
A. Of that eye, but he is already legally blind.
Q. Yeah, but he would just lose all sight?
A. Probably; if he got — if he had a severe trauma to that eye again, I doubt if it — although I could give you stories that you wouldn’t believe about others like that. So ...
[[Image here]]
Q. — I’m sure you must work with the psychology to the extent that once you *1068 have one eye missing, the fear of going completely blind exists.
A. Sure, Well, there is no doubt he is in a dangerous situation, and I really can’t comment on his particular job structure and on the disability he has entailed by his injury, but I can say that this eye won’t get any better. He does have depth of field; he can do what he wants to do, but if he feels in his mind that he is not capable of his previous job description, and he might endanger himself or others, then, yes, he sounds like he has a problem with that particular occupation.
Q. For your information, he is working at that job.
A. Good, I have encouraged him to go back to work.
Plaintiff received the maximum worker's compensation benefits pursuant to LSA-R.S. 23:1221(4)(o) for the loss of his sight. He now seeks supplemental earnings benefits under LSA-R.S. 23:1221(3).
In order to receive supplemental earnings benefits, plaintiff must prove that a work-related injury resulted in his inability to earn wages equal to ninety percent or more of his wages at the time of his injury. Daigle v. Sherwin-Williams Co., 545 So.2d 1005 (La.1989). This determination is necessarily a facts and circumstances one in which the court must be mindful of the jurisprudential tenet that worker’s compensation law is to be liberally construed in favor of coverage. Id. “In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee’s ability to earn a wage.” Daigle, 545 So.2d at 1007, quoting Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037, 1039 (La.App. 3d Cir.1985). If the plaintiff has established his entitlement to supplemental earnings benefits, the statute provides the employer the opportunity to prove that the employee is earning less than he is able to earn, because the employee is physically able to perform a certain job, that the job was offered to the employee, or that the job was available to the employee in his or the employer’s community or reasonable geographic region. Daigle, 545 So.2d at 1008-1009.
The parties stipulated that plaintiff’s average weekly wage was $310.40 before he was discharged. Under LSA-R.S. 23:1221(3)(a), plaintiff’s average monthly wage was four and three-tenths times his average weekly wage or $1,334.72. Therefore, plaintiff had the burden or proving he was not able to earn more than $1,201.25 per month (ninety percent of $1,334.72) because of is injury.
The hearing officer found that the evidence showed it was the plaintiff’s unfounded fears, and not his disability, which resulted in his inability to earn more than ninety percent of his prior wages. We affirmed this finding on summary docket in August and the plaintiff applied for writs to the Louisiana Supreme Court, which ordered the case remanded to this court for a full opinion.
LAW
The recently amended Worker’s Compensation Act specifically provides for direct appeal to the appropriate appellate court from decisions of the hearings officers. LSA-R.S. 23:1310.5A.(2) This amendment abolished the de novo review in the district court leaving the appellate courts as the first court of review. The Act does not, however, set forth the appropriate standard of review. An excellent discussion of this issue is found in Key v. Insurance Co. of North America, 605 So.2d 675 (La.App. 2d Cir.1992), wherein the court determined that the legislative and constitutional intent was to make the decision of the hearing officer tantamount to that of a district court judge. We believe this interpretation of the Act is correct and accordingly hold that the standard of review to be applied to appeals from the hearing officers should be the same as the standard applied to a district court decision.
The question of disability herein, whether the injury to the plaintiff’s eye prevents him from obtaining employment earning ninety percent of his pre-employ *1069 ment wages, is a question of fact. Manson v. City of Shreveport, 577 So.2d 1167 (La.App. 2d Cir.), writ denied, 580 So.2d 928 (La.1991). Accordingly, we may not set aside the hearing officer’s findings in this regard absent manifest error, or unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Rosell v. Esco, 549 So.2d 840 (La.1989).
In the instant case, we find that the hearing officer’s determination that the plaintiff failed to prove that a work-related injury resulted in his inability to earn wages equal to ninety percent or more of his wages at the time of his injury was not clearly erroneous. The testimony of the vocational rehabilitation expert established that there were two available jobs out of the ten possible jobs for which the plaintiff would be qualified, and that the plaintiff was entitled to reemployment rights within the state system. The record indicates that the plaintiff was capable of performing the job of dorm monitor at the School for the Deaf but refused to apply for the job because of his fear of being struck by one of the students. While we sympathize with the plaintiff’s fears, we believe that Dr. Breaud’s testimony clearly indicates that the degree of fear which the plaintiff was displaying was medically unfounded. The record also indicates that the plaintiff has not considered wearing protective eye wear to perhaps minimize any blow to his eye or at least to alleviate his fears concerning a reinjury to his eye.
For the reasons expressed, we affirm the decision of the hearing officer. All costs of this appeal are assessed to the plaintiff.
AFFIRMED.

. The Plaintiff stated that "I could basically get hit again, you know, with the children, because it was a danger and a risk. That’s why I didn’t even call in to that type job.” He also stated that he spoke to some people that worked at the school and they told him that "the children is kind of — they could get rowdy and you have to control them.”

. According to the plaintiff, he was never told about being qualified for non-competitive reemployment, which allowed him up until five years from the date of termination to be reemployed in some capacity with the state without having to compete with other applicants. In other words, he would be given priority over other applicants if he met the necessary job qualifications. He would also be allowed to be hired at the same pay he was receiving at his last position if the new agency agreed and the salary did not exceed the maximum pay for the new position.